1

2

3

4

5          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
6                    AT SEATTLE

7   SHAWN J. GROVER,

8                        Plaintiff,          CASE NO. C16-5869-RBL-MAT

9          v.

10  NANCY A. BERRYHILL, Acting          REPORT AND RECOMMENDATION
    Commissioner of Social Security,    RE: SOCIAL SECURITY DISABILITY
11                                       APPEAL

                         Defendant.
12

13          Plaintiff Shawn J. Grover proceeds through counsel in his appeal of a final decision of the

14  Commissioner of the Social Security Administration (Commissioner).   The Commissioner denied

15  plaintiff's application for Supplemental Security Income (SSI) after a hearing before an

16  Administrative Law Judge (ALJ).   Having considered the ALJ's decision, the administrative

17  record (AR), and all memoranda of record, the Court recommends this matter be REMANDED

18  for further administrative proceedings.

19                   **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1973.[1]  He stopped attending high school in the tenth grade

21  and has no past relevant work.  (AR 90-91, 104.)

22

23          _____
            [1] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil
    Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

    REPORT AND RECOMMENDATION
    PAGE - 1

Plaintiff protectively filed an SSI application in November 2013, alleging disability beginning June 29, 2013. (AR 210.) His application was denied initially and on reconsideration.

On May 22, 2015, ALJ Gary Elliott held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 85-109.) The ALJ issued a decision on June 23, 2015. (AR 12-24.) The ALJ noted a prior SSI claim denial on June 28, 2013 (AR 134-46), found plaintiff rebutted the presumption of ongoing non-disability with the submission of new material evidence of increased disability regarding his mental health condition, and considered his claim for the un-adjudicated period beginning on the protective filing date for his current claim. (*See* AR 12.) The ALJ found plaintiff not disabled as of the November 9, 2013 application date.[2]

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on August 24, 2016 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's schizoaffective disorder, bipolar type, and personality disorder, antisocial type, severe. Step three

---

[2] The record reflects plaintiff filed two prior SSI claims, in 2005 and 2010, the latter of which an ALJ denied in June 2013. (*See* AR 134, 146.) Plaintiff did not appeal and has not requested reopening of his prior claims.

REPORT AND RECOMMENDATION
PAGE - 2

asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform a full range of work at all exertional levels, but limited to performing simple, routine, repetitive tasks and to occasional contact with co-workers and the public. Plaintiff has no past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a landscape technician, park groundskeeper, and car washer.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in considering medical opinions, lay evidence, and his

symptom testimony. He requests remand for an award of benefits or, in the alternative, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[3] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

As described by the ALJ, plaintiff testified about his primary problem of auditory hallucinations, "which are distracting and tell him to kill himself daily[,]" his significant difficulties being around and getting along with other people, his impaired sleep, poor concentration, and suicidal thoughts, and that the medications he has been taking for the past year-and-a-half have been effective in resolving his visual, but not auditory hallucinations. (AR 17.)

---

[3] In Social Security Ruling (SSR) 16-3p, the Social Security Administration (SSA) rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. However, this change is effective March 28, 2016 and not applicable to the June 2015 ALJ decision in this case. The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

The ALJ concluded that, while plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.

"[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) *Accord Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Thomas*, 278 F.3d at 956-57. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999). The Court, as discussed below, finds the ALJ erred in assessing plaintiff's testimony.

A.      Inconsistency with the Medical Evidence and Evidence of Improvement

The ALJ found the treatment record inconsistent with plaintiff's testimony, and concluded the medical evidence showed plaintiff is "more than capable of sustaining unskilled work activity consistent with the [RFC] despite his mental health impairments." (AR 17-19.) The ALJ pointed to evidence showing symptom improvement with medication compliance, and found plaintiff's performances during psychological examinations to show he retains the cognitive ability to perform simple, routine, repetitive tasks. (AR 19.) The ALJ deemed plaintiff's ability to engage cooperatively with medical professionals to indicate he can tolerate social interaction with others, but restricted him to only occasional contact with co-workers and the public to account for claimed difficulties leaving his house and being around others. (*Id.*)

An ALJ may reject a claimant's symptom testimony as inconsistent with or contradicted

by the medical record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), and *Carmickle*, 533 F.3d at 1161. An ALJ also properly considers evidence associated with treatment, including evidence of improvement. *See* 20 C.F.R. § 416.929(c)(3) (treatments or other methods used to alleviate symptoms is "an important indicator of the intensity and persistence of your symptoms"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (ALJ may consider evidence of favorable response to conservative treatment). *Cf. Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

The ALJ here reasonably considered the evidence of plaintiff's cognitive abilities on examination and his interactions with medical providers, and adopted appropriate corresponding RFC limitations. The ALJ also properly considered evidence of improvement with medication compliance. However, the ALJ's failure to provide a more thorough analysis of plaintiff's medical and other history undermines the reasonableness of the ultimate conclusions reached.

The record reflects that, while reporting lifelong difficulties with mental health problems, plaintiff did not begin mental health treatment until April 30, 2014 (AR 341-42), only began taking medications for his symptoms on June 18, 2014 (AR 407-11), and underwent a number of changes in his medication regimen in the following months (AR 370-410). Plaintiff did not always appear for his appointments or take his medication as directed. (*See id.*) However, he identified issues associated with his failures to comply, including problems with hearing voices, the illness and eventual death of his mother in or around November or early December 2014, and his subsequent attempts at self-harm/suicide. (*See, e.g.*, AR 370-90.) The record also reflects plaintiff's consistent reports that, while the medications eliminated his visual hallucinations, his auditory hallucinations, although improved, had continued. (*See* AR 370-406.)

The ALJ includes much of the above in describing the medical record, but fails to discuss or distinguish this evidence in finding inconsistency and improvement, and in concluding plaintiff is capable of sustaining work. The Court finds this omission to detract from the substantial evidence support for the ALJ's conclusions.

B.    Other Reasons for Discounting Plaintiff's Testimony

The ALJ found "abundant evidence throughout the record" to "grossly weaken" the credibility of plaintiff's allegations. (AR 19-20.) The Court, however, finds a number of problems with the ALJ's other reasons for discounting plaintiff's symptom testimony.

1.    Prior ALJ's finding of similar fault and consideration of substance abuse:

The ALJ relied in significant part on the findings of the ALJ who found plaintiff not disabled in June 2013. (*See* AR 134-46.) The prior ALJ found plaintiff's sworn testimony and statements regarding his use of substances and overall functioning constituted "similar fault" under Social Security Ruling (SSR) 00-2p. (AR 140.) He concluded plaintiff made knowingly false and incomplete statements at hearing, including his testimony regarding substance abuse, which the ALJ found "completely contradicted by other evidence in the record." (AR 139.)

In 2013, the ALJ stated that, while plaintiff explicitly denied ever using illegal drugs, a medical record noted his "past medical history was 'significant for methamphetamine and cocaine use'", while another physician noted plaintiff's "poor dental health and that he was missing all four of his front teeth, which is consistent with an individual who abuses or has abused methamphetamine." (AR 140.)[4]    Plaintiff "tried to say that the person who was using

_____

[4] The ALJ also rejected plaintiff's testimony on other issues. The ALJ, for example, contrasted plaintiff's testimony of multiple suicide attempts by trying to hang himself, taking pills, and drinking bleach, with his report to an examiner of attempting suicide on only three occasions, and the fact his sister described only a single attempt involving Tylenol and did not discuss any "other memorable suicide attempts or anything about her brother drinking bleach." (AR 140.)

methamphetamine at the hospital was not him but his brother." (AR 145.)  The ALJ rejected this explanation for a number of reasons, including a detailed analysis of the medical record he relied on to support his similar fault finding, and the fact plaintiff's sister testified "her other brother does do drugs however, not cocaine or methamphetamine, but only heroin and alcohol."  (AR 145.)

The current ALJ determined the prior ALJ's finding diminished plaintiff's credibility and called into question the reliability of his testimony and statements in the record.  (AR 19.)  The ALJ found plaintiff was not forthright about his past drug and alcohol use, comparing his multiple denials of a drug and alcohol history, with the indication in the prior decision that plaintiff has a history of cocaine, heroin, and methamphetamine use.  (AR 19-20.)

Pursuant to SSR 00-2p, the SSA "shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence."  An ALJ may also consider evidence of a claimant's lack of candor regarding drug and alcohol usage.  *Thomas*, 278 F.3d at 959.  The Court, however, finds the current ALJ's reliance on the prior ALJ's findings of similar fault and past substance abuse problematic.

The current record contains the 2013 decision, but does not contain the evidence considered by the ALJ in rendering that decision.  While this Court may not substitute its judgment for that of the ALJ, it must be able to determine whether the current ALJ's conclusions, including his reliance on the prior ALJ's findings, are reasonably supported by and a rational interpretation of the evidence.  In this case, without the opportunity to review the evidence considered by the prior ALJ, the Court is unable to conduct the review required.

The Court is not, for example, able to consider the medical record relied upon by the prior ALJ as demonstrating plaintiff falsely testified regarding past substance abuse, or to compare that record to plaintiff's testimony at the 2012 hearing that the medical record related to his brother,

who had used plaintiff's name and who was currently in jail for "using somebody else's ID." (AR 53.) Review of the 2012 hearing also shows that, in contrast to the depiction of the ALJ, plaintiff's sister testified her other brothers' substance abuse included "[h]eroin, one, and just alcohol *and whatever they could get their hands on I guess*." (AR 39 (emphasis added).)

The current ALJ did not take the opportunity to address the issue of substance abuse or identity misappropriation at hearing. (*See* AR 85-109.) Records currently available for review reflect plaintiff's consistent denial of substance abuse and reporting regarding his brothers' substance abuse, criminal records, and incarceration. (*See, e.g.*, AR 315, 328-29, 335, 337, 392-93, 408.) The record also includes lay statements that provide a different explanation in relation to plaintiff's teeth (*see* AR 240 ("doesn't brush teeth has severe gum disease"), AR 247 ("Very bad teeth & gum disease"); *accord* AR 254-55)), and address substance abuse (*see* AR 244 (plaintiff has problem getting along with others "Sometimes when brothers come over and are not sober") and AR 307 ("He was never the type to drink alcohol or do drugs."))

The current ALJ's reliance on the prior ALJ's decision is also complicated by significant differences in the evidence available for review. The prior ALJ rendered his decision on June 28, 2013, ten months before plaintiff began to receive mental health treatment and a year before he began to take medication. The prior ALJ considered a record containing a single, February 2011 medical opinion diagnosing plaintiff with schizoaffective disorder, depressive type, and antisocial personality disorder, and a claimant who had not received any mental health treatment and refused "to go see a doctor for any reason." (AR 139, 142-43.) The record before the current ALJ included additional medical opinions and evidence of plaintiff's engagement in treatment and improvement with the use of medications. The ALJ's reliance on the prior ALJ's findings, without any discussion of the differences between the evidence available for review, raises a question as to the

reasonableness of his conclusions.  Given these differences and other deficiencies, the prior ALJ's findings cannot be said to serve as specific, clear, and convincing reasons for the rejection of plaintiff's symptom testimony.

2.    Secondary gain:

The ALJ concluded that, in line with the prior ALJ's findings, evidence in the record "strongly suggest[ed]" plaintiff "applied for disability benefits for secondary gain purposes, namely so that he can get financial assistance after his mother's death."  (AR 19 (citing AR 328).)  Plaintiff counters this reasoning by noting his mother died twelve months *after* he applied for benefits, and arguing it does not make sense to find him not credible simply because, like all SSI claimants, he filed a claim in pursuit of the cash benefit it provides.

"'Secondary gain' means 'external and incidental advantage derived from an illness, such as rest, gifts, personal attention, release from responsibility, and disability benefits.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1139-40 n.5 (9th Cir. 2014) (quoting Dorland's Illustrated Medical Dictionary 721 (29th ed.)).  While a single weak example of such evidence would not, standing alone, suffice to support an adverse determination, an ALJ may consider a claimant's motivation for secondary gain.  *Id*. at 1139-40.[5]

The record contains evidence associating plaintiff's pursuit of disability benefits with his mother's health.  Plaintiff, for example, reported to consultative medical examiner Dr. Samuel

_____

[5] "In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  *But see Cha Yang v. Comm'r of SSA*, No. 10-17590, 2012 U.S. App. LEXIS 13798 at *205-06 (9th Cir. Jul. 6, 2012) ("If a petitioner's desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant would ever be found credible."); *Ratto v. Secretary, Dep't of Health & Human Servs.*, 839 F. Supp. 1415, 1428-29 (D. Or. 2008) ("By definition, every claimant who applies for Title II benefits does so with the knowledge – and intent – of pecuniary gain. That is the very purpose of applying for Title II benefits. . . .  If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible.")

REPORT AND RECOMMENDATION
PAGE - 10

Coor: "He . . . has lived with [his mother] his whole life.  His mother is in her 60's and the main reason for him to try to get disability is because if his mother is no longer around he would not have the ability to care for himself."  (AR 328.)  (*See also* AR 315 (November 2013:  "He said that his mother has taken care of him but his mother has congestive heart failure and his family is insisting that he needs to learn to care for himself."); AR 333-34 (April 2014:  plaintiff "decided to get treatment now because his family is requesting it."; "Shawn's mother's health is not doing well due to heart problems and old age currently and she encouraged him to seek . . . services for housing and ongoing mental health treatment."))  The record does, therefore, contain evidence reasonably construed as reflecting a motivation of secondary gain.

However, as with the finding of inconsistency with the medical record, the Court finds the reasonableness of the ALJ's conclusion undermined by the minimal discussion of relevant evidence.  For example, consideration of all of plaintiff's reporting to Dr. Coor provides a fuller picture of the basis for plaintiff's pursuit of disability benefits, including, in addition to his reported lifelong reliance on his mother, his untreated mental illness dating back to childhood, multiple suicide attempts, and ongoing hallucinations, suicidal thoughts, and self-isolation.  (AR 328-29.)  (*Accord* AR 315-16 (similar reports to Dr. Terilee Wingate).)  The Court does not find the ALJ's conclusion as to secondary gain to persuasively support his credibility conclusion.

3.    Evidence of personal and social functioning:

The ALJ interpreted the record to show plaintiff's demonstration of a level of functioning in his personal life "grossly inconsistent with his allegations."  (AR 19.)  The ALJ contrasted plaintiff's testimony his mother had taken care of him his entire life, with notes in the record that he "actually took care of his sick, elderly mother" and acted as her "caretaker" for two years prior to her death.  (*Id.* (citing AR 370, 383).)  The ALJ found this to demonstrate plaintiff's ability to

perform unskilled work activity.  (AR 19.)  The ALJ also concluded plaintiff exaggerated his social functioning limitations, contrasting his reports to two providers that he had only left his house on two or three occasions in the prior two or five years, with evidence he had left the house multiple times since the alleged onset date.  (*Id*. (citing AR 329, 333, 322, 328, 243, 355).)

An ALJ may consider inconsistency between a claimant's testimony and evidence of his functioning.   *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").  An ALJ may also consider a claimant's tendency to exaggerate.  *See Tonapetyan*, 242 F.3d at 1148.

The ALJ here accurately noted evidence plaintiff exaggerated the extent to which he was homebound.  (AR 19.)  For example, evidence in the record contradicted plaintiff's April 28, 2014 report he had only left his house on two occasions in the past five years (AR 33).  (*See* AR 322 (January 16, 2014 medical appointment), AR 328-29 (February 26, 2014 psychological evaluation in which plaintiff reported it was the third time in the past two years he had left his house), AR 243 (January 7, 2014 report by plaintiff's mother that he left home once or twice a year), and AR 355 (February 18, 2014 medical appointment).)  The record also contains plaintiff's reports he cared for his mother in the final two years of her life.  (AR 383 (December 9, 2014: plaintiff reported he had not been able to come in for his medications because he had been "taking care of his sick mother," and that "[h]is mother died this past week, she was initially his caretaker, more recently he was taking care of her.") and (AR 370-71 (February 11, 2015: plaintiff reported he "cared for" his mother in the last two years of her life).)

However, the record is also notable in providing consistent support for plaintiff's testimony he rarely left his home and engaged in minimal activities.  (*See* AR 92-94, 98-102 (plaintiff

REPORT AND RECOMMENDATION
PAGE - 12

testified his mother took care of him his entire life and that, after his mother's death, his sister took over that role; his sister and/or brother-in-law came to his house every third or fourth day, helped with grocery shopping, cleaning, and driving, and brought him three or four meals per week).) In June 2014, shortly after beginning treatment, plaintiff's main goal was "being able to live independently." (AR 406.) In August 2014, plaintiff was "shut into his mother's home," and wanted "to begin to use the bus system to travel around[.]" (AR 392.) In December 2014, shortly after his mother's death, plaintiff reported constantly hearing voices telling him to kill himself, and that he was "currently living alone but has an older sister who looks after him." (AR 383.) He did not leave his home other than for medical appointments "and would like to learn how to use public transportation; and help with housekeeping." (AR 386; *see also* AR 388.) In January 2015, plaintiff reported he had always lived with his mother, who "did the shopping, errands etc.", needed "to learn how to do these things now[,]" and wanted to explore living in an adult family home as he did "not want to be a 'parasite' on his siblings." (AR 380.) In February 2015, plaintiff reported he "didn't leave the house hardly at all for the past 20 years, that his mother did everything for him[,]" that he was "honestly struggling, and overwhelmed right now[,]" had "never lived alone before this, and is rather unsure what to do." (AR 370-71.)

Plaintiff's mother provided similar testimony in a function report dated January 7, 2014, less than a year before she died. (AR 239-46; *see also* AR 255-56.) She described the care provided by plaintiff as including helping her if she falls, helping her with vacuuming and moving couches when she could not do so, bringing her drinks or a sandwich, and checking in on her. (AR 240-41.) She also indicated she did the shopping and cared for their cats, and that plaintiff "buttons crooked and still can [sic] tie shoes correctly", did not comb his hair or brush his teeth, and needed reminders for personal needs, grooming, and taking medicine; could prepare simple foods

("sandwiches microwave"), would "wash one spoon if he wants to eat no more maybe a bowl"; "very seldom" went outside, did not have a driver's license, and shopped by computer only, for tobacco for his pipe; had hobbies and interests including watching television, using the computer, and sometimes reading; and left home "once in a great while" for Christmas dinner at his sister's, or "once or twice a year", and needed someone to accompany him. (AR 239-43.)

The Court, in sum, finds the ALJ's interpretation of the evidence of plaintiff's personal and social functioning unreasonable. For this reason, and for the reasons stated above, the ALJ's assessment of plaintiff's symptom testimony lacks the support of substantial evidence.

Medical Opinions

The record contains several opinions associated with plaintiff's mental impairments. In March and May 2014 respectively, non-examining State agency consultants Drs. Bruce Eather and Andrew Forsyth opined plaintiff had non-severe affective disorders. (AR 115-16, 126-27.) In November 2013, psychological evaluator Dr. Terilee Wingate opined plaintiff had marked limitations in performing routine tasks without special supervision, adapting to changes, asking simple questions or requesting assistance, and maintaining appropriate behavior, and severe limitations in the ability to perform activities in a schedule, maintain regular attendance, and be punctual, communicate and perform effectively, and to complete a work day and work week without interruptions from psychologically based symptoms. (AR 317.) She also assessed a Global Assessment of Functioning (GAF) score of 35 (*id.*), indicating "some impairment in reality testing or communication" or "major impairment in several areas, such as work or school family relations, judgment, thinking or mood[.]" Diagnostic and Statistical Manual of Mental Disorders

34 (4th ed. 2000) (DSM-IV-TR).[6]  In February 2014, Dr. Coor found no physical limitations, but opined it appeared plaintiff would not be able to engage in any meaningful employment unless his mental health issues were addressed and treated.  (AR 328-31.)  In June 2014, Dr. Timothy Truschel diagnosed plaintiff with schizoaffective disorder and agoraphobia, and assessed a GAF of 40, reflecting the same level of impairment as found by Dr. Wingate.  (AR 410.)[7]

Given the contradictory medical opinions, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting the opinions of an examining physician.  *Lester*, 81 F.3d at 830-31.  Plaintiff argues the ALJ erred in failing to provide any legitimate reasons for rejecting the opinions of Dr. Wingate, in failing to address the evaluation from Dr. Truschel, and in failing to provide any reason for rejecting Dr. Coor's opinion as to mental health.  The Court, for the reasons set forth below, agrees with plaintiff that the ALJ erred in his consideration of the medical opinion evidence.

A.    Dr. Terilee Wingate

The ALJ found Dr. Wingate's opinion grossly inconsistent with the overall medical evidence of record and that it appeared to be based on plaintiff's subjective, not credible complaints.  He explained:

> Notably, the claimant emphasized during the evaluation that his mother and sister take care [of] his activities of daily living.  But as noted above, he acknowledged elsewhere in the record that he was his mother's caretaker for two years up until her death.  Also, his ability to take care of his mother, as well as engage in activities like

---

[6] The most recent version of the DSM does not include a GAF rating for assessment of mental disorders.  DSM-V at 16-17 (5th ed. 2013).  While the SSA continues to receive and consider GAF scores from "acceptable medical sources" as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.  Administrative Message 13066 ("AM-13066").

[7] Plaintiff describes Dr. Truschel as a treating provider.  The record shows Dr. Truschel conducted an initial assessment of plaintiff in June 2014 and one follow-up appointment.  (AR 407-11, AR 402-04.)

> playing computer games and reading, shows a level of mental functioning consistent with an individual who can sustain work activity. He also engaged cooperatively with people indicating that he can handle some level of social interaction. She also failed to question his curious behavior during the Rey 15-Item Test.

(AR 20.) The ALJ gave the opinions of Dr. Wingate little weight.

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 416.927(c)(4). An ALJ may reject a physician's opinion based on inconsistency with the record, or where that opinion is "based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (quoting *Morgan*, 169 F.3d at 602), as well as based on inconsistency with a claimant's level of activity, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). An ALJ also properly considers any factor that tends to support or contradict the opinion of a physician. 20 C.F.R. § 416.927(c)(6).

The Commissioner observes that Dr. Wingate assessed plaintiff some six months before he started taking medication. She points to evidence supporting the ALJ's finding of inconsistency as including the evidence of plaintiff's subsequent improvement with medication and of his ability to interact with medical providers and evaluators cooperatively and without incident. However, because the ALJ did not point to either the timing of Dr. Wingate's evaluation or the evidence of subsequent improvement, the Court may not rely on these post hoc rationalizations as a basis for affirming his decision. *See Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court reviews ALJ's decision "based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.") Moreover, the above-described errors in the ALJ's finding of inconsistency between plaintiff's testimony and the evidence of record implicates the ALJ's reliance on a similar finding of

inconsistency in the rejection of Dr. Wingate's opinions.  Also, as plaintiff observes, the record in large part contains medical opinion evidence consistent with the opinions of Dr. Wingate.

The ALJ's interpretation of this evidence as reflecting Dr. Wingate's reliance on plaintiff's subjective reports finds support in Dr. Wingate's extensive quoting and descriptions of plaintiff's reporting.  (*See* AR 315-16.)  However, the ALJ's errors in his assessment of plaintiff's symptom testimony call into question his rejection of Dr. Wingate's opinions due to this physician's reliance on plaintiff's subjective reports.  Dr. Wingate's report also shows his reliance on objective medical evidence, including his observations plaintiff had uncombed hair and was "rather unkempt[,]" was "obviously nervous but cooperative[,]" and had a depressed mood and flat affect.  (AR 318.)  Dr. Wingate further found plaintiff's thought process and content, perception, memory, concentration, and abstract thought did not fall within normal limits, noting plaintiff was "rather paranoid and fearful[,]" reported auditory hallucinations and thought disorder, and had impaired responses to testing of memory, concentration, and abstract thought.  (AR 318-19.)  While the ALJ faults Dr. Wingate for failing to question plaintiff's behavior in the Rey 15-Item Test, the description of that behavior appears to support, rather than detract from the opinions of Dr. Wingate:  "He was given the Rey, but he quickly said he had memorized the items and pushed away the paper and then seemed very confused and disorganized when he tried to replicate what he had seen."  (AR 319.)  In addition, while the Commissioner here offers a discussion of this particular test and argument as to why plaintiff's performance "could have raised flags" (Dkt. 16 at 15), the ALJ did not include any such reasoning in his decision.

The Commissioner argues the ALJ properly rejected the assessment of significant social limitations assessed by Dr. Wingate given plaintiff's ability to interact with medical providers, and that his ability to engage in "somewhat normal activities like playing computer games and reading"

showed he could tolerate simple tasks. (Dkt. 16 at 14.) These arguments do not, however, identify any clear conflict between the opinions of Dr. Wingate and the RFC. Dr. Wingate found plaintiff had no or only mild limitations in relation to very short and simple instructions, and only moderate limitations in relation to detailed instructions, learning new tasks, and making simple work-related decisions. (AR 317.) While finding marked and severe limitations in relation to numerous aspects of performance in a work setting, Dr. Wingate did not render any opinions in relation to plaintiff's ability to interact with co-workers, supervisors, or the public. (*See id.*) The Court, for this reason and for the reasons stated above, finds an absence of substantial evidence support for the ALJ's consideration of Dr. Wingate's opinions.

B.    Dr. Timothy Truschel and Dr. Samuel Coor

    While the ALJ did not identify Dr. Truschel by name, he did assess and provide sufficient reasons for rejecting the opinion as to plaintiff's GAF score. (*See* AR 22.) *See also supra* n. 6. However, because the ALJ relied in part on his credibility assessment in rejecting this evidence, further consideration is warranted.

    The ALJ also failed to sufficiently consider the opinions of Dr. Coor.  He described Dr. Coor's opinions, noted Dr. Coor is knowledgeable with the SSA disability program and had an opportunity to examine plaintiff, found consistency with plaintiff's normal physical examination and lack of medical treatment, and accorded the opinion significant weight. (AR 20.) The ALJ did not, however, provide any basis for rejecting Dr. Coor's opinion plaintiff would be unable to engage in any meaningful employment until his mental health problems were addressed and treated.[8]

_____

    [8] Dr. Coor conducted a physical, not a mental examination.  However, while an ALJ may consider a physician's area of expertise in determining the weight a doctor's opinion should be given, 20 C.F.R. §

Lay Witness Evidence

2          Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

3   to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v.*

4   *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject the testimony of a lay witness

5   only upon giving reasons germane to that witness. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th

6   Cir. 1996) (finding rejection of testimony of family members because they were "'understandably

7   advocates, and biased'" amounted to "wholesale dismissal of the testimony of all the witnesses as

8   a group and therefore [did] not qualify as a reason germane to each individual who testified.")

9          The ALJ addressed lay statements from plaintiff's mother (AR 239-46, 255-56), and a

10  neighbor (AR 307). In declining to accept these statements, the ALJ pointed to plaintiff's "serious

11  credibility issues," the evidence of his activities, his ability to leave his home to attend medical

12  appointments, and the absence of supporting evidence and/or contradictory evidence in the record.

13  (AR 21.) The ALJ indicated he relied more heavily on the opinions of medical doctors. (*Id.*) The

14  ALJ cited to a report completed by plaintiff's sister, but failed to provide any reasons for rejecting

15  her statements in that form. (*See* AR 15, 247-54.)

16         The ALJ's errors in the assessment of plaintiff's symptom testimony and the medical

17  opinions implicate his reliance on the same reasoning for rejecting the lay statements from

18  plaintiff's mother and neighbor. Also, given the errors in the symptom testimony analysis, the

19  ALJ's failure to address the statements of plaintiff's sister cannot be deemed harmless. *See*

20  *Molina*, 674 F.3d at 1115-22 ("Where lay witness testimony does not describe any limitations not

21  already described by the claimant, and the ALJ's well-supported reasons for rejecting the

22

23  416.927(c)(5), he may not properly reject a physician's opinion solely on the grounds that it lies outside the
    doctor's area of expertise, *see Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

REPORT AND RECOMMENDATION
PAGE - 19

claimant's testimony apply equally well to the lay witness testimony," the failure to address the lay testimony may be deemed harmless).  The ALJ, as such, also erred in his consideration of all of the lay testimony.

<u>Remand</u>

The Court has discretion to remand for further proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  However, a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

Before remanding a case for an award of benefits, three requirements must be met.  First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).  Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'"  *Id.*  In so doing, the Court considers the existence of "'outstanding issues'" that must be resolved before a disability determination can be made.  *Id.* (quoting *Treichler*, 775 F.3d at 1105).  Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'"  *Id.* (quoting *Garrison*, 759 F.3d at 1021).[9]

Finally, even with satisfaction of the three requirements, the Court retains "'flexibility'" in

---

[9] Although not applicable to the ALJ's June 2015 decision, the SSA revised its regulations regarding the consideration of medical opinions with the intent "to make it clear that it is never appropriate under our rules to 'credit-as-true' any medical opinion."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 at 5858-60 (January 18, 2017) (regulation changes effective March 27, 2017).  The SSA further clarified that the "credit-as-true rule" is "inconsistent with the general rule that, when a court finds an error in an administrative agency's decision, the proper course of action in all but rare instances is to remand the case to the agency for further proceedings."  *Id.*

REPORT AND RECOMMENDATION
PAGE - 20

determining the proper remedy. *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison*, 759 F.3d at 1021). The Court may remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id*. As recently stated by the Ninth Circuit:

> The touchstone for an award of benefits is the existence of a disability, not the agency's legal error. To condition an award of benefits only on the existence of legal error by the ALJ would in many cases make "disability benefits . . . available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."

*Id.* at 495 (quoted sources omitted). *Accord Strauss v. Comm'r of Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.") If the record is "uncertain and ambiguous," the matter is properly remanded for further proceedings. *Treichler*, 775 F.3d at 1105 (the court must determine whether the record, taken as a whole, leaves "'not the slightest uncertainty as to the outcome of [the] proceeding[.]'") (citations omitted).

Outstanding issues remain in this case and necessitate further administrative proceedings. Those issues include, but are not limited to, evidence associated with the 2013 finding of similar fault and the failure to sufficiently explore those issues in relation to the current matter. The ALJ should, on remand, reconsider plaintiff's symptom testimony, the testimony of lay witnesses, and the medical opinions of record, and should consider obtaining an expert medical opinion to consider plaintiff's claim.

## CONCLUSION

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

///

## **DEADLINE FOR OBJECTIONS**

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 2, 2017**.

DATED this <u>18th</u> day of May, 2017.

_____
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 22